UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBERT FACKELMAN,

     Plaintiff,

v.                           Case No.:  5:20-cv-578-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____

## **OPINION AND ORDER**

Plaintiff Robert Fackelman seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v.*

*Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on January 17, 2019, alleging disability beginning November 10, 2016. (Tr. 75, 202-203). The application was denied initially on June 5, 2019, and upon

reconsideration on September 10, 2019. (Tr. 75, 89). Plaintiff requested a hearing and on May 8, 2020, a hearing was held before Administrative Law Judge ("ALJ") Joseph R. Doyle. (Tr. 33-60). On May 18, 2020, the ALJ entered a decision finding Plaintiff not disabled from November 10, 2016, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 17-28).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on September 30, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on November 30, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 23).

### D.      Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of November 10, 2016, through his date last insured of December 31, 2018. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: "diabetes mellitus and obesity." (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1 (20 §§ C.F.R. 404.1520(d), 404.1525, and 404.1526). (Tr. 22).

Before proceeding to step four, the ALJ found that Plaintiff had the following

RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 404.1567(c) except could never climb ladders, ropes or scaffolds; could only occasionally climb stairs and ramps; could frequently stoop, kneel, crouch, crawl and engage in activities requiring balance; and could have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles and exposure to unprotected heights.

(Tr. 23). At step four, the ALJ found that Plaintiff was unable to perform his past

relevant work as a groundkeeper II and driver/amusement park worker. (Tr. 26-27).

At step five, the ALJ relied on the testimony of a vocational expert to find that

considering Plaintiff's age (53 on the date last insured), education (at least high

school), work experience, and RFC, there are jobs that exist in significant numbers

in the national economy that Plaintiff could perform. (Tr. 27-28). Specifically, the

ALJ found that Plaintiff could perform such occupations as:

(1)   laundry worker, DOT[1]  361.684-010, medium, unskilled, SVP 1 or 2

(2)   cleaner, DOT 358.687-010, medium, unskilled, SVP 1 or 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(3)  hand packager, DOT 920.587-018, medium, unskilled, SVP 1 or 2.

(Tr. 28). The ALJ concluded that Plaintiff had not been under a disability from November 10, 2016, through December 31, 2018, the date last insured. (Tr. 28).

## II.    Analysis

On appeal, Plaintiff raises a single issue: whether  the ALJ committed reversible error by failing to properly assess Plaintiff's obesity under Social Security Ruling ("SSR") 19-2p. (Doc. 30, p. 1). Plaintiff also includes an argument that the ALJ did not properly consider a State agency reviewing physician's opinion and Andrew Carson. PA-C's opinion. (Doc.30, p. 5-6). The Commissioner contends that the ALJ properly evaluated the medical evidence when finding Plaintiff not disabled. (Doc. 31, p. 1).

### A.    Obesity

Plaintiff argues that the ALJ failed to properly assess Plaintiff's functional limitations caused by obesity. (Doc. 30, p. 3). Plaintiff claims that his obesity during the relevant time period, either alone or in combination with his other impairments, imposed additional limitations on his ability to work. (Doc. 30, p. 3).

When considering a claimant's overall medical condition, an ALJ must consider obesity. *Anderson v. Kijakazi*, No. 8:20-cv-947-AEP, 2021 WL 4146300, at *6 (M.D. Fla. Sept. 13, 2021) (citing *Silas v. Saul*, No. 8:18-cv-477-T-SPF, 2019 WL 4686802, at *7 (M.D. Fla. Sept. 26, 2019)). Obesity should be considered at

steps two through five of the sequential evaluation. *Id.* (citing *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (citing SSR 02–1p)). Under the new regulations effective May 20, 2019 for applications filed on or after this date and all claims pending before the agency on or after this date – including this case – an ALJ "must consider the limiting effects of obesity when assessing a person's RFC. . . . We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, 2019 WL 2374244 (May 20, 2019).

A review of the record establishes the ALJ properly considered Plaintiff's obesity. In the decision, the ALJ found obesity a severe impairment at step two. (Doc. 19). At step three, the ALJ found obesity as well as Plaintiff's other severe impairment of diabetes mellitus did not meet or equal a listing. (Doc. 22). The ALJ determined:

> Although there is no listing for obesity, the claimant's weight has been carefully considered within the parameters of Social Security Ruling 19-2p. However, the claimant's obesity had not resulted in any end-organ damage. While it is recognized that the claimant's weight might well have aggravated his diabetes complaints, it does not reasonably appear that the extent of his obesity, even when considered in combination with his diabetes, met or equaled a listed impairment or would have precluded all work.

(Tr. 22-23). The ALJ noted that the records show Plaintiff was obese with a BMI in the low 40s in June 2017 and again a year later . (Tr. 25). The ALJ explained: "[u]ltimately, the undersigned concludes that, through the December 2018 date last

insured, the claimant had remained capable of medium work with the additional postural and hazard limitations added to account for poor diabetes management and obesity." (Tr. 25). The ALJ supported this finding by noting that Plaintiff was obese and admitted poor diet and exercise. (Tr. 25). Even so, the ALJ also noted that with the use of oral diabetes medication, Plaintiff reported excellent home blood sugar readings. (Tr. 25). And Plaintiff denied any diabetes-related symptoms during the relevant time period. (Tr. 25-26). The ALJ further found that during the relevant time period and even with diabetes and obesity, Plaintiff's physical exam findings were grossly normal, including gait, strength, and sensation. (Tr. 26). As a result of his findings, the ALJ included the following postural and hazard limitations in the RFC to account for both Plaintiff's obesity and diabetes: "could never climb ladders, ropes or scaffolds; could only occasionally climb stairs and ramps; could frequently stoop, kneel, crouch, crawl and engage in activities requiring balance; and could have only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles and exposure to unprotected heights." (Tr. 23).

The ALJ's overall consideration of Plaintiff's obesity satisfies the requirements of SSR 19-2p. The ALJ found Plaintiff's obesity a severe impairment and then accounted for this impairment in assessing Plaintiff's RFC for the relevant

time period. And Plaintiff has not shown that he was more limited during the relevant time period. Substantial evidence supports the ALJ's decision as to obesity.

## B.    Persuasiveness of Medical Source Opinions

Plaintiff claims that a State agency reviewing physician and a treating physician assistant found greater limitations than in the RFC and argues the ALJ erred in not adopting these greater limitations. (Doc. 30, p. 5-6).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical

opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings,

diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

### 1.    State Agency Reviewing Physician

On June 5, 2019, State agency reviewing physician R. James Mabry, M.D. reviewed Plaintiff's medical records and found Plaintiff would have exertional and postural limitations due to Plaintiff's morbid obesity. (Tr. 70-71). Dr. Mabry determined that Plaintiff's morbid obesity "limits capacity and exacerbates other impairment." (Doc. Tr. 71)). Dr. Mabry also determined Plaintiff could lift 20 occasionally and 10 pounds frequently, could stand or walk for 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. (Tr. 70). He found Plaintiff could: climb ramps, stoop, kneel, and crouch frequently; and climb ladders, ropes, and scaffolds, and crawl occasionally. (Tr. 70).

In not adopting Dr. Mabry's opinion, the ALJ found Dr. Mabry's opinion unpersuasive. (Tr. 25). The ALJ supported this finding by noting that the evidence related to Plaintiff's functioning through his 2018 date last insured is consistent with a less restrictive medium RFC rather than light work as found by Dr. Mabry. (Tr. 25). The ALJ explained that Plaintiff's physical functioning through 2018 was generally good and even though he was obese, his home blood sugar readings were excellent and he denied any diabetes-related symptoms. (Tr. 25-26). The ALJ further explained:

> This point is especially important as the State agency consultants partially based their findings on the idea that peripheral neuropathy was plausible based on the claimant's self-reported symptom. Yet, at both 2017 and 2018 exams, he denied any diabetes-related symptoms. Further, physical exam findings were grossly normal including gait, strength and sensation. There was brief mention of diabetic nephropathy in mid-2018, but without any follow-up by the date last insured. Overall, even if the claimant's diabetes has worsened, as 2019 notes eventually include a neuropathy diagnosis, the evidence reflects quite good functioning through the December 2018 date last insured. Thus, as the evidence is consistent with the medium residual functional capacity adopted at Finding 5, the State agency consultants' prior administrative findings are unpersuasive.

(Tr. 26).

Here, the ALJ clearly articulated specific reasons why Dr. Mabry's opinion is unpersuasive. The ALJ found that the treatment notes during the relevant time period do not support and are inconsistent with greater limitations than those found in the RFC. The ALJ also determined that Dr. Mabry appeared to rely on Plaintiff's worsening symptoms in 2019, which is after the date last insured. The Court finds substantial evidence supports the ALJ's determination that Dr. Mabry's opinion is unpersuasive and thus the ALJ did not err by failing to adopt additional limitations in the RFC.

### 2. Physician Assistant ("PA") Carson

Plaintiff argues the ALJ erred in not adopting the limitations found in a Diabetic Mellitus Medical Source Statement completed by treating medical source

Andrew Carson, PA-C[2]. (Doc. 30, p. 5-6). Plaintiff claims PA Carson found Plaintiff more limited than the ALJ assessed in the RFC. (Doc. 30, p. 5-6).

On July 15, 2019, PA Carson completed a Diabetes Mellitus Medical Source Statement (Tr. 309-12). PA Carson found Plaintiff's symptoms to be fatigue, difficulty walking, general malaise, and extremity pain and numbness. (Tr. 309). He determined that Plaintiff could walk for 1/2 to 1 block, sit for 2 hours at a time, stand for 30 minutes at one time, sit for about 4 hours in an 8-hour workday, and stand/walk for less than 2 hours in an 8-hour workday. (Tr. 310). He also found Plaintiff would need to shift positions at will and be able to walk around every 20 minutes, for 10 minutes at a time during an 8-hour workday. (Tr. 310). He determined Plaintiff would need to take unscheduled breaks every 1-2 hours for 5-10 minutes, and elevate his legs about 50% of the time in an 8-hour workday. (Tr. 310). He also determined that Plaintiff could lift less than 10 pounds frequently, 10-20 pounds occasionally, and 50 pounds rarely. (Tr. 311). He found Plaintiff could rarely twist, stoop, crouch, and climb stairs and could never climb ladders. (Tr. 311). Finally PA Carson found Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, high humidity, wetness, perfumes, fumes, odors, gasses, and dust, and should avoid even moderate exposure to cigarette smoke, soldering fluxes, and solvents/cleaners. (Tr. 311). He determined Plaintiff would be off task 15% of a

---

[2] "PA-C" is a Certified Physician Assistant.

workday and miss about 4 days per month. (Tr. 312). He found these symptoms and limitations began in 2014. (Tr. 312).

The ALJ summarized PA Carson's Medical Source Statement. (Tr. 26). The ALJ noted PA Carson completed it after the date last insured. (Tr. 26). The ALJ also found that PA Carson's treatment notes from the relevant period between 2016 and 2018 did not support and were inconsistent with PA Carson's conclusions and the evidence from the relevant period. (Tr. 26). In support of these statements, the ALJ repeated that even with poor diabetes compliance, Plaintiff reported excellent home sugar levels. (Tr. 26). And while there was a mention of some diabetic nephropathy by mid-2018, there was no evidence of related follow up or consultation with nephrology by December 2018, the date last insured. (Tr. 26). The ALJ again noted that during the relevant time period, Plaintiff's physical exam findings were grossly normal, including gait, strength, and sensation. (Tr. 26). The ALJ also noted that Plaintiff specifically denied any diabetes-related symptoms as of his last 2018 exam. (Tr. 26). The ALJ concluded that the record evidence, including PA Carson's own treatment notes during the relevant period, did not support and was not consistent with PA Carson's opinion. (Tr. 26). For these reasons, the ALJ found PA Carson's opinion unpersuasive.

The ALJ's finding that PA Carson's opinion was unpersuasive is supported by substantial evidence. The ALJ found that during the relevant time period, PA

Carson's own treatment records did not support and were inconsistent with his opinion as to the limitations found in the Medical Source Statement. Thus, the ALJ did not err by failing to adopt PA Carson's opinion as to additional RFC limitations.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on December 13, 2021.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Partie